UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JUNE ROBERTS, ANITA BRADLEY,
ELIZABETH GARDNER, STEPHEN LEE and
SUFFOLK INDEPENDENT LIVING
ORGANIZATION (SILO),

                Plaintiffs,

-against-

ROYAL ATLANTIC CORPORATION,
ROYAL ATLANTIC NORTH CORPORATION,
ROYAL ATLANTIC RESTAURANT
CORPORATION, DOUBLE K MANAGEMENT
CORPORATION, STAR DEVELOPMENT
REALTY HOLDING CORPORATION, DES
REALTY CORPORATION, OCEAN REALTY
HOLDING CORP., STEVEN KALIMNIOS,
ANTHONY KALIMNIOS and THEMISTOCLES
KALIMNIOS,

                Defendants.
----------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 03-2494

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   MAR 03 2010   ★

LONG ISLAND OFFICE

APPEARANCES:

    LAW OFFICE OF MARTIN J. COLEMAN
    BY: MARTIN J. COLEMAN, ESQ.
    Attorneys for Plaintiffs
    110 Marcus Blvd., Suite 300
    Hauppauge, New York 11788

    ALAN M. KANE, ESQ.
    Attorney for Defendants
    325 Reef Road Suite 212
    Fairfield, CT 06824

WEXLER, District Judge

    This action was commenced by Plaintiffs pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §12101 (the "ADA"), which prohibits discrimination in places of

1

public accommodation. See 42 U.S.C. §12182 (Title III). Named as defendants are various corporate entities and individuals with ownership and/or management interests in the Royal Atlantic cooperative buildings located in Montauk, New York (the "Royal Atlantic" or the "Resort").[1] Plaintiffs (with the exception of the corporate plaintiff organization) are disabled individuals who seek access to the rooms and facilities at the Resort. Presently before the court is Defendants' motion pursuant to Rules 12 and/or 56 of the Federal Rules of Civil Procedure, seeking judgment as to the claim of access to rooms, for failure to name necessary parties as required by Rule 19 of the Federal Rules of Civil Procedure. Specifically, Defendants claim that any relief ultimately ordered by the court with respect to renovation of rooms at the Resort will be impossible to implement because the individuals whose consent, and financial resources are necessary to accomplish any renovation have not been named as Defendants.

## BACKGROUND

I.  Prior Proceedings

   A.  The Trial

A non-jury trial of Plaintiffs' claims was commenced on May 31, 2005. The parties adjourned the trial pending the preparation of a report by an agreed upon architect (the "Independent Architect"), who was charged with evaluating the Royal Atlantic to determine the feasability of making changes to bring the property into ADA compliance. It was the hope of the parties, and the court that the report of the Independent Architect would facilitate a settlement. In particular, it was hoped that the Independent Architect would make agreeable construction suggestions that would allow at least one ground floor unit (the Resort has no elevator) to be

---

[1]  Also named as a defendant was the corporation controlling an adjacent restaurant. Plaintiffs have abandoned any claim for access to the restaurant.

2

made ADA compliant, and address some of the Plaintiffs' concerns regarding parking and other access. The parties agreed to work with the Independent Architect and report back to the court.

Unfortunately, the work done by the Independent Architect did not result in a settlement of the matter. The non-jury trial therefore continued, and was concluded in April of 2006. Thereafter, this court issued its findings of fact and conclusions of law. See Roberts v. Royal Atlantic, 445 F. Supp.2d 239 (E.D.N.Y. 2006).

In connection with its findings and conclusions, this court noted that the Resort was built prior to 1992, and held that it underwent no "alterations," within the meaning of the ADA after that date. Id. at 247. As such, the court held that the Plaintiffs bore the burden of proving that the modifications sought were "readily achievable," within the meaning of the ADA. Id. at 248. Application of this standard led the court to consider "the nature and cost of the action needed and the financial impact of the proposed modification . . . ." Royal Atlantic, 445 F. Supp.2d at 248. Upon consideration of the facts developed at trial, the court held that Plaintiffs failed to sustain their burden of proving that the construction changes sought, with respect to the rooms and other areas, were readily achievable, and ordered the entry of judgment in favor of the Defendants. Id.

B. The Appeal

Holding that the wrong legal standard was applied to Plaintiffs' ADA claims, the Second Circuit reversed the decision of this court, and remanded the case for a new trial. See Roberts v. Royal Atlantic Corp., 542 F.3d 363 (2008), cert. denied, Royal Atlantic Corp. v. Roberts, 129 S. Ct. 1581 (2009). Specifically, the Second Circuit disagreed with this court's holding that the Resort was not altered, within the meaning of the ADA, after 1992. Instead, the court found, as a matter of law, that renovations to the rooms at the Resort performed during 2000-2001, were

"alterations," within the meaning of the ADA, i.e., changes "that [affect] or could affect the usability of the building or facility or any part thereof." Royal Atlantic, 542 F.3d at 369. As alterations, the ADA required the renovations to have been completed so as to make the units "readily and accessible to disabled individuals to the 'maximum extent feasible.'" Id. at 371, quoting, 42 U.S.C. §12183(a)(2). The Second Circuit noted that ADA compliant renovations could have been implemented, at the time of the alteration, with a "relatively small marginal increase in difficulty and cost compared to the overall cost of the project." Id. at 374. The failure to make ADA compliant renovations at the time of the alteration did nothing to obviate the need to make the renovations sought in this lawsuit.

Application of the ADA alteration standard is a far cry from the standard applied by this court at trial. As noted, it was held at trial that the Plaintiffs bore the burden of proving that the modifications sought were "readily achievable," and allowed this court to consider "the nature and cost" associated with such modifications. See Royal Atlantic, 445 F. Supp.2d at 248. Application of the ADA alteration standard, in contrast, involves no judgment regarding costs and benefits and, instead, "requires accessibility except where providing it would be 'virtually impossible.'" Royal Atlantic, 542 F.3d at 371. As to burdens of proof, the Second Circuit held that in an alterations case, the plaintiff bears only the burden to come forward with "some manner in which the alterations could be, or could have been made 'readily accessible and usable by individuals with disabilities . . .'" Id. at 371. The burden then shifts to the defendant to prove that the plaintiff's proposal would be "virtually impossible," in light of the nature of the facility. Id.

The Second Circuit held that Plaintiffs satisfied their burden of production with regard to demonstrating that rooms could be renovated so as to make them wheelchair accessible. The

4

court remanded the matter to this court to determine, upon application of the proper ADA alterations standard, whether Defendants can sustain the burden of proving that achieving wheelchair accessability to at least some of the units is "virtually impossible," in light of the "nature of the facility." Royal Atlantic, 542 F.3d at 375. The appellate court instructed this court that it could not consider the comparative cost or scope of the proposed renovations. The court further held that the focus of the inquiry must be on the configuration of the units as of 2000-2001, the time of the alteration, and not in their present state. Id. Thus, the question to be answered on remand is whether Defendant can prove that, as of the time of the alteration, making a small number of the units wheelchair accessible was "virtually impossible," in light of the "nature of the facility." Id.

The Second Circuit also addressed the issues of access to the parking and pool areas. In light of the fact that the present motion is addressed to the room renovation issue only, rulings regarding the parking and pool areas will not be detailed here. Thus, the court focuses below on this issue of unit renovations, and the impact of any order of this court with respect to this issue. Specifically, the court addresses the issue alluded to, but not decided by the Second Circuit – whether the court has the power, given the nature of the Resort, and the identity of the parties named, to order the relief sought with respect to renovation of rooms. See Royal Atlantic, 542 F.3d at 378-79.

II. The Present Motion

This motion addresses the question of whether Defendants are entitled to summary judgment on the ground that Plaintiffs have failed to name necessary parties as Defendants-- namely the individual owners of units at the Resort. In support of the motion, Defendants argue

that the failure to name all individual unit owners as Defendants defeats any possible attempt to require these individuals to comply with any order of the court requiring renovation.

   A.   Preliminary Issues

Before addressing the merits of the motion, the court addresses two preliminary issues raised by Plaintiffs: (1) whether the Second Circuit's decision prohibits this court from ruling on the compliance issue prior to the new trial, and (2) whether Defendants have waived their right to raise the issue to be addressed in this motion.

As to the first issue, the court rejects Plaintiffs' argument that the Second Circuit's ruling requires that issues regarding possible compliance be raised only by way of a post-trial hearing on injunctive relief. It is certainly true that the Second Circuit recognized the issue raised by this motion, commenting that if this court "concludes that the plaintiffs are entitled to some or all of the relief they have sought, the court should, of course, inquire whether the named defendants can comply with an order to provide that relief." Royal Atlantic, 542 F.3d at 379.

This court does not read the Second Circuit's language as a mandate that the matter raised herein be heard only in a post-trial setting. Despite the reversal and remand of this matter, this court retains the discretion to handle its cases in the most expeditious manner that preserves the resources of the court, and the parties. A grant of this motion would significantly affect the issues on retrial. Specifically, a holding that necessary parties have not been named necessarily implies that when all necessary parties are named, the newly named Defendants will be entitled to fully participate in a trial regarding room renovation. It makes little sense to hold a trial that requires the introduction of extensive evidence as to construction issues and costs, before adding additional parties, only to later hold that necessary parties were deprived of the opportunity to

6

participate. Therefore, the court holds that it is appropriate to address the motion prior to scheduling a new trial.

As to waiver, the court notes that the issue before the court has long lurked in the background of this litigation. Despite Plaintiffs' argument, Defendants have never waived their right to raise this issue. Instead, they agreed to hold the matter in abeyance, pending a decision by this court after a trial on the merits. There was never any waiver, express or implied, by Defendants of the right to have the court decide whether the failure to name individual unit owners as Defendants was fatal to implementation of Plaintiffs' requests regarding renovation.

B.     <u>Second Circuit Suggestions and Efforts to Assess Voluntary Compliance</u>

The Second Circuit speculated that this court made no specific findings regarding the ability to comply with any order to renovate, because it concluded that no such relief was available. The appellate court's speculation is exactly what occurred. The court made no findings regarding the ability to comply, but instead, went forward with trial of the issue of whether the desired renovations were readily achievable. Holding that the renovations sought by the Plaintiffs were not required to be made, the court never addressed issues relating to the form of ownership, and its impact on the ability of the named Defendants to comply with any order requiring construction.

As a postscript to its opinion, the Second Circuit noted this court's concern regarding the fact that not all unit owners were named as Defendants. Noting that the ADA imposes its requirements on, <u>inter alia</u>, "operators" of public accommodations, the Second Circuit stated that Plaintiffs did properly identify "at least some – and perhaps all of the defendants contemplated by the ADA." <u>Royal Atlantic</u>, 542 F.3d at 379. The court also noted that the duty to remove barriers "depends on who had the legal authority to make alterations, 'which is generally

7

determined by the contractual agreement.'" Id, quoting, U.S.Dep't of Justice, *Questions and Answers* (rev'd Sept. 1992). The court concluded that it could not say whether Plaintiff's claims "would fail based upon the named defendants' potential inability to comply with orders of the district court directing modifications." Id. Additionally, the Second Circuit recognized the "rare" possible case where the ownership structure of a facility might be encompassed within the concept of the "nature" of a facility when evaluating whether the ADA's accessability requirements might be relaxed. Royal Atlantic, 542 F.3d at 375.

Recognition of this issue led the appellate court to suggest possible alternatives to pursue regarding voluntary compliance with any eventual order of this court. Accordingly, this court ordered, before the briefing of this motion, that Defendants make inquiry regarding possible avenues of voluntary compliance, as suggested by the Second Circuit. Specifically, Defendants were asked to consider the alternative approaches suggested by the appellate court in its ruling, i.e., to make inquiry whether compliance might be effectuated in a voluntary manner by either: (1) the Corporation offering to purchase units as they were offered for sale; (2) asking individual unit owners to volunteer to have their unit made ADA compliant, with the cost of such renovations being distributed among all owners, (3) offering additional compensation to those who volunteered their units or (4) "by some other practicable and appropriate, even if costly, mechanism." Royal Atlantic, 542 F.3 at 375.

The alternatives suggested by the Second Circuit were presented to unit owners at a shareholders' meeting held after the appeal herein, with all unit owners being present either in person, or by proxy. At that meeting, unit owners were asked first whether they would consent to selling their units back to the Corporation. No unit owner was interested, and that proposition was unanimously rejected. Next, unit owners were asked whether they would volunteer their unit

for renovation so as to be made ADA complaint. No unit owner volunteered, and that proposition was also unanimously declined. Third, unit owners were asked if any would voluntarily agree to swap their second floor unit for a first floor unit in return for renovation. No unit owner volunteered and this proposition, like the previous two, was unanimously declined. Unit owners were also asked if they would voluntarily agree to any of the previously raised propositions if the cost of renovation were spread among all shareholders in the form of an across the board assessment. A single unit owner of a first floor unit agreed to make his unit available for renovation if costs were shared. When such an assessment was put up for a vote, it was defeated.

After the meeting, the royal Atlantic Board of Directors reviewed its certificate of incorporation and realized that even if the proposition of the Corporation buying back a unit for renovation was accepted, no such purchase could actually be consummated. This is because neither the Certificate of Incorporation, nor the offering documents allow the Corporation to require a proprietary tenant to sell back any unit, or submit to the costs of extensive renovation without that unit owner's consent. Having failed to accomplish an agreement as to voluntary compliance, this court turns to consider the motion.

III. <u>Disposition of the Motion</u>

    A.    <u>The Structure of Ownership, and Duties and Obligations of Owners</u>

This court made specific post-trial findings of fact with respect to the legal form of ownership of units at the Resort. Those findings were not disturbed on appeal, and are set forth in detail here as they are important factual findings regarding the present motion.

The Resort consists of two separate residential cooperative corporations both named as defendants herein – the Royal Atlantic Corporation ("Royal Atlantic South") and the Royal

9

Atlantic North Corporation ("Royal Atlantic North"). Royal Atlantic South consists of 98 units in six interconnected buildings on two floors. Royal Atlantic North consists of 39 units in five buildings on two floors. Individual unit owners purchase shares, depending upon the location of their unit, in either the Royal Atlantic South Corporation or the Royal Atlantic North Corporation. Royal Atlantic, 445 F. Supp.2d at 241. Because the terms and conditions governing ownership in both of these corporations are the same, the court will refer to these cooperative corporations collectively herein as the "Corporation."

It is the Corporation that owns the land and buildings at the Resort. The powers of the Corporation are set forth in its certificate of incorporation (the "Certificate"). The Certificate provides, <u>inter alia</u>, that it is the responsibility of the Corporation to "keep in good repair all of the buildings including all of the units and walkways surrounding same . . . except those portions the maintenance and repair of which are expressly stated to be the responsibility of shareholders, as provided in the Proprietary Lease." The certificate further provides that shareholders are obligated, at their own expense, to keep the interior, fixtures and appurtenances of their individual units in good repair.

As contemplated by the certificate of incorporation, owners of shares in the Corporation occupy their individual units pursuant to the terms of a proprietary lease (the "Lease"). It is the terms of the Lease that govern the relationship between the Corporation and the unit owners. The parties to each Lease are the lessor, which is the Corporation, and the unit holder (the "Unit Owner" or the "Proprietary Tenant"). It is the Lease that sets forth the obligations of each party thereto. While, as noted above, the Corporation is responsible for keeping the building, its surroundings and walkways in good repair, the Proprietary Tenants are responsible for the

maintenance and upkeep of their unit's interior. See Royal Atlantic, 445 F. Supp.2d at 242. As previously found by this court:

> the terms of the Lease require that proprietary tenants keep the interior of their units in good repair. Proprietary tenants are responsible for the painting and decorating of their units. Additionally, they are responsible for the maintenance, repair and replacement of plumbing, gas and heating fixtures and equipment as well as refrigerators, ranges and other appliances, exposed pipes and the fixtures to which they are connected. The responsibility of proprietary tenants ends at the walls of the units so that they are not responsible for those pipes or conduits that are within the walls of the unit but are responsible for lighting and electrical fixtures and equipment on the interior walls of the unit.

Royal Atlantic, 445 F. Supp.2d at 242.

The Proprietary Lease gives the lessor the right to enter the lessee's unit for the purpose of carrying out its duty to perform "repairs, replacements or maintenance." This right can be exercised, however, only to "make or facilitate repairs . . . or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the Unit as may be required for any such purpose . . . ." Repairs, replacements or maintenance of the interior portions of the units are the responsibility of the Proprietary Tenants. The Lease specifically prohibits unit owners from making any alterations or additions to their units with respect to the water, gas, plumbing, heating, wiring or air conditioning without the prior consent of the Corporation.

B.  The Identity of the Named Defendants

As noted, the named Defendants are corporate entities, and individuals with ownership and/or management interests in the Resort. More specifically, Plaintiffs have named as Defendants the corporations that are the lessors pursuant to the Leases with the Unit Owners (referred to herein previously, and collectively as the "Corporation"), and the management company that handles the administrative aspects of unit rental to the public. The named individuals Steven, Anthony and Themistocles Kalimnios, are successors to Taukpoint Realty,

11

which was the original corporate sponsor when the Resort was converted to a residential cooperative corporation. While these individuals may have been owners of ground floor units at the Resort at some point, they are no longer owners of any such unit.

C. Disposition of the Motion

i. Legal Principles: Rule 19

Rule 19(a) provides, in pertinent part, that a person who is "subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action" shall be joined as a party if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>
>> (i) as a practical matter impair or impede the person's ability to protect that interest...."

Fed. R. Civ. P. 19(a).

Rule 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party qualifies as a "necessary" party under Rule 19(a). See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000); LBA Intern. Ltd. v. C.E. Consulting LLC, 2010 WL 305355 *3 (S.D.N.Y. 2010). If a party held to be necessary has not been joined, the court "must" order that the person be made a party. Fed. R. Civ. P. 19(a)(2); see Viacom, 212 F.3d at 725. In the event that joinder is not feasible, the court proceeds to consider "whether "in equity and good conscience," the action should proceed with the existing parties, or be dismissed. Fed.R.Civ.P. 19(b).

12

ii. The Unit Owners Are Necessary Parties

As previous proceedings have made clear, the Royal Atlantic is structured as a cooperative corporation. There is no question as to the Corporation's right, and indeed, its duty to maintain the common areas at the resort. The obligations of the Corporation are made clear in the documents referred to above. Thus, with respect to any order regarding the common areas, such as the parking lot, walkways and pool, the court is satisfied that Plaintiffs have named the proper Defendants, and no other person or entity is a necessary party under Rule 19. While Defendants argue that any order regarding the removal of barriers existing in the common areas will be hollow in the absence of the ability to implement an order to renovate rooms, they do not argue that the failure to name necessary parties is fatal to any claim regarding the common areas.

As to room renovation, the court is convinced that the failure to name all unit owners who participate in the Resort's rental program, will be fatal to the implementation of any order requiring unit renovation. As the description of the corporate structure and documents makes clear, the Corporation cannot act alone to purchase any unit, or force any unnamed unit owner to bear the costs of renovation. The assessment of the costs of renovation must be subject to a vote of the Proprietary Tenants. While this court likely has the power to require any party defendant to incur the costs associated with renovating a unit to make it ADA compliant, it cannot issue any order with respect to individuals who are not before the court. Accordingly, the court concludes that failure to join the unit owners violates Rule19(a)(1)(A).

Even if Rule19(a)(1)(A) did not require joinder, joinder would nonetheless be required pursuant to Rule 19(a)(1)(B). That subsection of Rule 19 provides for joinder when the party sought to be joined "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede

the person's ability to protect that interest...." Fed. R. Civ. P. 19(a)(1)(B)(i). The unit owners certainly claim an interest in the subject matter of this action, i.e., their ownership rights in units that may be assessed substantial amounts to finance ADA renovations. As a result, unit owners have the right to be heard in this litigation, and that right is violated by litigating this matter in their absence. As individuals with a strong financial interest in decisions regarding construction work performed to their units, there is no question but that the unit owners are "so situated that the disposition of the action in the person's absence may . . . impair or impede" those owners' "ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B)(i). For the foregoing reason the court holds that all Unit Owners who participate in the rental program at the Royal Atlantic are necessary parties under Rule 19.

Plaintiffs argue that Defendants have engaged in some kind of wrongdoing by allegedly divesting themselves of any ground floor unit during the course of trial so that this court would not be in a position to order appropriate relief. The court has considered Plaintiffs' argument and makes no finding of any wrongdoing on the part of any Defendant. Even if a named Defendant sold a ground floor unit during trial, it would have been that unit owner's right to do so. Plaintiffs never requested, and there was never any order in place, prohibiting the sale of a unit during the pendency of the trial. Plaintiffs were always free to amend their complaint to add additional parties, and could have sought an order prohibiting the sale of a unit, or imposing conditions on any such sale, by any named Defendant during trial. Plaintiffs never sought any such order, and cannot now be heard to complain because Defendants may have taken actions that violated no order of the court.

### iii. Defendants Are Not Entitled To Dismissal

In view of the court's holding that the unit owners are necessary parties, the next issue is whether failure to name these individuals requires, as argued by Defendants, dismissal of all claims for room renovation. Rule 19 requires that the court consider dismissal only if joinder is "not feasible." Fed. R. Civ. P. 19(b). This occurs if the individuals sought to be joined are not subject to service of process, and their joinder will defeat subject matter jurisdiction. See Fed. R. Civ. P. 19(a). That is not the case here. Instead, where, as here, the parties sought to be joined appear to be subject to service of process, and their joinder will not defeat subject matter jurisdiction, this court "must" order that they be made parties to the action. Fed. R. Civ. P. (a)(2). Instead of ordering dismissal, the court orders joinder of all unit owners who make their units available for public rental before any claim of unit renovation proceeds. The court limits its order to requiring joinder only of those Unit Owners who make their units available for rental to the public.

### CONCLUSION

For the foregoing reasons, the court grants the motion pursuant to Rule 19 of the Federal Rules of Civil Procedure, and holds that unit owners who make their units available for public rental must be made parties to this litigation before any claim regarding unit renovation may proceed to trial. It is for the Plaintiffs to decide what course to take. In the event that unit owners are not named, Plaintiffs may choose to proceed solely with their claims regarding access to all other areas of the Resort. Counsel are directed to contact the court within two weeks of the

date of this decision to arrange for a final pretrial status conference.

SO ORDERED.

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
March 3, 2010