UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JUNE ROBERTS, ANITA BRADLEY,
ELIZABETH GARDNER, STEPHEN LEE and
SUFFOLK INDEPENDENT LIVING
ORGANIZATION (SILO),

          Plaintiffs,

   -against-

ROYAL ATLANTIC CORPORATION,
ROYAL ATLANTIC NORTH CORPORATION,
ROYAL ATLANTIC RESTAURANT
CORPORATION, DOUBLE K MANAGEMENT
CORPORATION, STAR DEVELOPMENT
REALTY HOLDING CORPORATION, DES
REALTY CORPORATION, OCEAN REALTY
HOLDING CORP., STEVEN KALIMNIOS,
ANTHONY KALIMNIOS and THEMISTOCLES
KALIMNIOS, et al.,

          Defendants.
----------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 03-2494

(Wexler, J.)

APPEARANCES:

    LAW OFFICE OF MARTIN J. COLEMAN
    BY: MARTIN J. COLEMAN, ESQ.
    Attorneys for Plaintiffs
    110 Marcus Blvd., Suite 300
    Hauppauge, New York 11788

    ALAN M. KANE, ESQ.
    Attorney for All Defendants, except as otherwise noted below
    325 Reef Road Suite 212
    Fairfield, CT 06824

    SHAPIRO & COLEMAN, P.C.
    BY: RICHARD H. COLEMAN, ESQ.
    727 N. Broadway Suite C-1
    N. Massapequa, NY 11758

1

Attorneys for Defendant Morris Newman,
Henry V. White, Kim M. White, Jaquelino L. Giorgio
Scott Schrager, Walter Larkin, Kevin Desimon, Ann Desimon

HAMMILL, O/BRIEN, CROUTIER, DEMPSEY, PENDER & KOEHLER
BY: TINA ALYSE YANOVER, ESQ., WADE THOMAS DEMPSEY, ESQ.
6851 Jericho Turnpike, Suite 250
Syosset, NY 11791
Attorneys for Defendant Paul J. Salvato, Lorraine Salvato

KRAL, CLERKIN, REDMOND, RYAN, PERRY & VAN ETTEN. LLP
BY: GEORREY H. PFORR, ESQ.
538 Broadhollow Road
Melville, NY 11747
Attorneys for Defendants Michael Hanna, Linda Hanna

Julie Cohen, Abraham Cohen, John S. Demchick, Michele L. Demchick,
Karen Schultheis, Carol Ann Coleman, Carl Celardi, Frances Celardi
Defendants Pro Se

WEXLER, District Judge

This action was commenced in 2003 pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §12101 (the "ADA"), which prohibits discrimination in places of public accommodation. See 42 U.S.C. §12182 ("Title III"). Plaintiffs (with the exception of the corporate plaintiff organization) are disabled individuals who seek access to the rooms and facilities of the Royal Atlantic Resort, located in Montauk, New York (the "Resort"). As described below, and in greater detail in the previous opinions of this court and the Second Circuit Court of Appeals, the Resort consists of a group of cooperative apartments joined together in what looks like, and is marketed as, a single beachfront resort with pools and a restaurant. The cooperative units comprising the Resort are available for sale and re-sale. Individual owners are free to occupy their units exclusively, and are not required to make their units available for rental. If owners wish, however, they can make their units available for

periodic seasonal rental to members of the general public. The rental of units is facilitated by a management company (named as one of the Defendants herein) that handles rentals on behalf of unit owners who participate in the rental program. Owners who wish to rent their units simply make their units available to the management company, the company advertises and offers the units for rent, communicates with members of the public who wish to stay at the Resort, and facilitates the entire rental process on behalf of the unit owner, in exchange for a fee.

The originally named Defendants are various corporate entities and individuals with ownership and/or management interests in the Royal Atlantic.[1] After: (1) a 2006 trial, Roberts v. Royal Atlantic, 445 F. Supp.2d 239 (E.D.N.Y. 2006); (2) a 2008 appeal, Roberts v. Royal Atlantic Corp., 542 F.3d 363 (2008); (3) a 2009 denial of certiorari by the United States Supreme Court, Royal Atlantic Corp. v. Roberts, 129 S. Ct. 1581 (2009), and, (4) this court's 2010 summary judgment decision on a motion made with respect to Rule 19 of the Federal Rules of Civil Procedure, Roberts v. Royal Atlantic Corp., 2010 WL 749944 (E.D.N.Y. 2010), Plaintiffs added a large group of individuals as Defendants. These Defendants are individual owners of units at the Resort. This case is now scheduled for a non-jury trial to commence on November 5,

---

[1] Also named as a defendant was the corporation controlling an adjacent restaurant. Plaintiffs have abandoned any claim for access to the restaurant.

2012. Presently before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, the motions are denied.

## DISCUSSION

I. Prior Proceedings and Issues to be Tried

   A. The Trial and Appeal

The Court assumes familiarity with all prior proceedings herein, and reviews only briefly the decisions after the trial and appeal herein to identify those issues that have been held by the Second Circuit to be necessary for the upcoming trial.

In its 2006 opinion, this court noted that the Resort was built prior to 1992, and held that it underwent no "alterations," within the meaning of the ADA after that date. Royal Atlantic, 445 F. Supp.2d at 247. As such, the court held that Plaintiffs bore the burden of proving that the modifications sought were "readily achievable," within the meaning of the ADA. Id. at 248. Ultimately, this court held that Plaintiffs failed to sustain their burden of proving that the construction changes sought were readily achievable, and ordered the entry of judgment in favor of Defendants. Id.

On appeal, the Second Circuit held that this court applied the wrong legal standard and the wrong burden of proof to Plaintiffs' claims. The decision of this court was therefore vacated and remanded for a new trial. See Roberts v. Royal Atlantic Corp., 542 F.3d 363 (2008). Importantly, the Second Circuit held, as a matter of law, that renovations to the rooms at the Resort performed during 2000-2001, were "alterations," within the meaning of the ADA, i.e., changes "that [affect] or could affect the usability of the building or facility or any part thereof." Royal Atlantic, 542 F.3d at 369. As alterations, the ADA required the renovations to have been

4

completed so as to make the units accessible to disabled individuals to the "maximum extent feasible." Id. at 371, quoting, 42 U.S.C. §12183(a)(2). The Second Circuit noted that ADA compliant renovations could have been implemented, at the time of the alteration, with a "relatively small marginal increase in difficulty and cost compared to the overall cost of the project." Id. at 374. Importantly, the Second Circuit noted that application of the proper standard involves no judgment regarding costs and benefits and, instead, "requires accessibility except where providing it would be 'virtually impossible.'" Royal Atlantic, 542 F.3d at 371.

In addition to holding that this court applied the wrong ADA standard, the Second Circuit held that this court utilized the wrong burden of proof. Specifically, the Second Circuit held that where, as here, alterations were made after 1992, a plaintiff bears only the burden to come forward with "some manner in which the alterations could be, or could have been made 'readily accessible and usable by individuals with disabilities . . .'" Id. at 371. The burden then shifts to the defendant to prove that the plaintiff's proposal would be "virtually impossible," in light of the nature of the facility. Id.

As to application of the burden of proof in this case, the Second Circuit held, as a matter of law, that Plaintiffs satisfied their burden of production with regard to demonstrating that rooms could have been renovated at the time of alteration so as to make them wheelchair accessible. The court remanded the matter to this court to determine, upon application of the proper ADA alterations standard, whether Defendants can sustain their burden of proving that achieving wheelchair accessability to at least some of the units was "virtually impossible," in light of the "nature of the facility." Royal Atlantic, 542 F.3d at 375. The appellate court instructed this court that it could not consider the comparative cost or scope of the proposed

5

renovations. The court further reminded this court that the focus of its inquiry must be on the configuration of the units as of 2000-2001, the time of the alteration, and not in their present state. Id. Thus, as to room renovation to allow access the question to be answered at the upcoming trial, as identified by the Second Circuit, is whether Defendants can prove that, as of the time of the alteration, making a small number of the units wheelchair accessible was "virtually impossible," in light of the "nature of the facility." Id.

The Second Circuit also addressed the issues of access to the parking lot and pool areas. As to the parking lot, the Second Circuit concluded that the parking areas are along the "path of travel," to the altered rooms. As such, even if the lots were not "altered" after 1992, within the meaning of the ADA, they were still required to have been made accessible to the maximum extent feasible. The paths, however, need only have been made accessible from a parking space "to the areas of public function within the Resort." 542. F.3d at 377. Finally, as to the pool area, the Second Circuit held that it could not hold, as a matter of law, that such areas were altered after 1992. Thus, the issue of alteration of the pool area is a matter to be determined at the upcoming trial. In the event that such areas were, in fact, altered, the Resort would have been required to make path of travel to the pool areas wheelchair accessible. Id. In the event that no such alteration occurred, the issue will be whether the removal of architectural barriers to pool entry is readily achievable. The Second Circuit noted the relative burdens to apply with respect to the pool access issue, and held that Plaintiffs satisfied their burden of production by proffering their plans and those of the independent architect that permitted cost-effective wheelchair access to at least one pool area. If there was no post-1992 alteration to the pool area, it will be up to the

Defendants to prove that the Plaintiffs' proposal is not readily achievable. If that area was altered after 1992, the more stringent burdens set forth above will apply to the pool area as well.

B. <u>Joinder of Necessary Parties</u>

After remand, this court entertained a motion made by Defendants for summary judgment to dismiss the matter for failure to join necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure. That motion was prompted by the court's concern whether, given the nature of the Resort, and the identity of the parties named, it could order the relief sought with respect to renovation of rooms, without first joining the individual owners. See <u>Royal Atlantic</u>, 542 F.3d at 378-79. The Second Circuit echoed that concern. Noting that the ADA imposes its requirements on, <u>inter alia</u>, "operators" of public accommodations, the appellate court stated that Plaintiffs did properly identify "at least some – and perhaps all of the defendants contemplated by the ADA." <u>Royal Atlantic</u>, 542 F.3d at 379. The court also noted that the duty to remove barriers "depends on who had the legal authority to make alterations, 'which is generally determined by the contractual agreement.'" <u>Id</u>, quoting, U.S.Dep't of Justice, *Questions and Answers* (rev'd Sept. 1992). The Second Circuit concluded that it could not say whether Plaintiff's claims "would fail based upon the named defendants' potential inability to comply with orders of the district court directing modifications." <u>Id</u>. Despite this concern, the Second Circuit noted that whether or not the named Defendants had the "unilateral" authority to renovate units to make them ADA compliant had "little bearing on whether they violated the ADA." <u>Royal Atlantic</u>, 542 F.3d at 375. Additionally, the Second Circuit recognized that it would be a "rare" case where the ownership structure of a facility could excuse the ADA's accessibility requirement. <u>Id</u>.

7

Recognition of issues raised by the ownership structure of the Resort led the appellate court to suggest possible alternatives to pursue regarding voluntary compliance with any eventual order of this court. Accordingly, this court ordered, before the briefing the motion, that Defendants make inquiry regarding possible avenues of voluntary compliance, as suggested by the Second Circuit. Specifically, Defendants were asked to consider the alternative approaches suggested by the appellate court in its ruling, i.e., to make inquiry whether compliance might be effectuated in a voluntary manner by either: (1) the Corporation offering to purchase units as they were offered for sale; (2) asking individual unit owners to volunteer to have their unit made ADA compliant, with the cost of such renovations being distributed among all owners, (3) offering additional compensation to those who volunteered their units or (4) "by some other practicable and appropriate, even if costly, mechanism." Royal Atlantic, 542 F.3 at 375.

The alternatives suggested by the Second Circuit were presented to unit owners at a shareholders' meeting. Unit owners were asked first whether they would consent to selling their units back to the Corporation. No unit owner was interested, and that proposition was unanimously rejected. Next, unit owners were asked whether they would volunteer their unit for renovation so as to be made ADA complaint. No unit owner volunteered, and that proposition was also unanimously declined. Third, unit owners were asked if any would voluntarily agree to swap their second floor unit for a first floor unit in return for renovation. No unit owner volunteered and this proposition, like the previous two, was unanimously defeated. Unit owners were also asked if they would voluntarily agree to any of the previously raised propositions if the cost of renovation were spread among all shareholders in the form of an across the board assessment. A single unit owner of a first floor unit agreed to make his unit available for

8

renovation if costs were shared. When such an assessment was put up for a vote, it was defeated. After thus exploring the possibility of voluntary compliance, this court turned to consider the merits of the Rule 19 motion.

After describing the legal form of ownership of units at the Resort, the court held that the units owners were necessary parties. That holding recognized the interests of owners in the decision making process, and their rights to participate in this litigation. Thus, the court held, "[a]s to room renovation, the court is convinced that the failure to name all unit owners who participate in the Resort's rental program, will be fatal to the implementation of any order requiring unit renovation." The court went on to note that while it had the power to require any party defendant to incur the costs associated with renovating a unit to make it ADA compliant, it could issue no order with respect to "individuals who are not before the court." Id. Thus, the court concluded that it was necessary for Plaintiffs to name as Defendants all unit owners who participate in the Resort's rental program.

Plaintiffs have served many additional Defendants since this court's joinder opinion and the parties have engaged in additional discovery. With the exception of the pending motions for summary judgment, the case is now trial ready. It is to those pending motions that the court now turns.

II. The Motions

The parties have cross-moved for summary judgment. Relying on the Second Circuit's holding that they have already sustained their burden of proof with respect to room renovation and parking lot access, Plaintiffs argue that Defendants have failed to come forward with evidence sufficient to refute that evidence and that they are therefore entitled to summary

9

judgment on those issues. Defendants argue, for the first time in this litigation, that as a residential cooperative they are exempt from Title III of the ADA. Specifically, Defendants rely on 42 U.S.C. §12181(7) which, inter alia, exempts from the definition of a place of "public accommodation," "an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor." 42 U.S.C. §12181(7). Defendants also argue that Plaintiffs cannot be awarded the relief they seek because the only unit-owner Defendants named are those who own units on the second floor of the Resort.

III. Disposition of the Motions

The court turns first to Defendants' argument that they do not operate a place of public accommodation. According to Defendants, the joinder of the individual unit owners requires this court to revisit its earlier conclusion as to the nature of the Resort, and to hold either that each unit is a residential property not subject to Title III, and/or that each individual Defendant must own more than five units, to be liable under Title III. The court disagrees.

As noted in its prior opinions, Title III defines places of public accommodation as including, "an inn, hotel, motel, or other place of lodging." 42 U.S.C. §12181(7). This definition does not include purely residential facilities. See Reid v. Zackenbaum, 2005 WL 1993394 *4 (E.D.N.Y. 2005); Independent Housing Services of San Francisco v. Fillmore Center Associates, 840 F. Supp. 1328, 1344 (N.D. Ca. 1993). Further, the statute excludes establishments within a building containing "not more than five rooms for rent or hire" which is "actually occupied by the proprietor" as a "residence." Id. Neither provision requires a reversal of the holding that the Resort is, indeed a place of public accommodation.

While the court held that Rule 19 joinder of all unit owners participating in the rental program was necessary, both to afford full relief and to allow full participation by individuals who might be affected by this court's order, it never held that each unit owner individually operates a place of public accommodation. No such holding is necessary to the holding that the Resort is a place of public accommodation or that the unit owners were properly named as party Defendants. As the record has clearly and consistently shown, the Resort advertises and holds itself out to the public as a place where rooms are openly available for rent. The fact that the Resort is made up of a group of individual owners cannot be relied upon to change its character as an "inn, hotel, motel, or other place of lodging," and to avoid compliance with Title III. The Resort is not required to advertise and rent out units to the public. It can, and could have, maintained its status as a purely residential facility. It has chosen not to do so. Instead, the Resort is advertised as open to the general public as a place of lodging. It is therefore currently a place of public accommodation under Title III, and was such a place when this case was commenced.

The court turns next to the issue raised by the apparent fact that the named Defendants own only second floor apartments, and are therefore argued to be beyond the court's reach with respect to any renovation. In response, Plaintiffs make clear that they have focused on first floor renovations because such renovations are less costly and, if agreed to, would have made sense to all parties. They state that they have never abandoned their claim that the Resort is required to make at least some rooms accessible and, if such accessibility cannot be achieved as to a first floor unit, the court should consider whether there are means available to make a second floor unit accessible. Such means would not necessarily require installation of an elevator, but could instead involve installation of a small lift, or allow for the possibility of renovating a room to

11

accommodate a wheelchair user who can be transported to the second floor by some other means, including being carried to an otherwise non-accessible area. Because the Resort is a place of public accommodation, and it makes no difference that certain Defendants own only second floor units, the court denies all of Defendants' motion for summary judgment.

Turning to Plaintiffs' motion, the court holds that numerous issues of fact, including whether Defendants can sustain their burden of proof as to room and parking lot renovation and whether the pool area underwent a post-1992 alteration. Trial on such matters is necessary. This court will, as required by the Second Circuit, conduct a trial to consider whether the Title III of the ADA was violated when renovations were made after 1992. Once this is determined, the court will decide, based upon all of the evidence, what the proper remedy shall be.

## CONCLUSION

For the foregoing reasons, the court denies all motions for summary judgment. The Clerk of the Court is directed to terminate the motions appearing at docket entries 240, 241, 252, 269 and 272. Trial of this action shall commence, as previously scheduled, on November 5, 2012 at 9:30 A.M.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
October 5, 2012